UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Doris R. B.**, <br><br> Plaintiff, <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY,** <br><br> Defendant. | Civ. No. 20-08032 (KM) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

    Doris R. B. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Title II Disability Insurance Benefits ("DIB") and Title XVI supplemental social security income. Upon reviewing and weighing certain evidence, the Administrative Law Judge ("ALJ") concluded that Doris R. B. was not disabled from January 15, 2013, through March 11, 2019, the date of the decision. Doris R. B. claims the ALJ's decision is not supported by substantial evidence.

    I find that the ALJ's determinations that Doris R. B.'s mental limitations did not render her entirely unable to engage in substantial gainful activity were supported by substantial evidence. As to physical limitations, however, the findings are somewhat ambiguous. I therefore remand for clarification and a reassessment of whether the mental and physical limitations, in combination, add up to a finding of disability. The decision of the Commissioner is therefore **REVERSED and REMANDED** for further proceedings.

1

## I. BACKGROUND[1]

Doris R. B. applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on September 13, 2016, and for supplemental social security income pursuant to section 1614(a)(3)(A) of the Social Security Act on September 14, 2016, alleging disability beginning as of January 15, 2013. (AR 19.) Her application was denied initially and on Reconsideration. (AR 75–239.) She. requested a hearing before an ALJ to review her application de novo. (AR 348–49.) A hearing was held on October 19, 2018, before ALJ Scott Tirrell, who issued a decision on March 6, 2019. ALJ Tirrell denied disability at step five of the sequential evaluation, ruling that, although Doris R. B. could no longer perform her past relevant work, she is capable of adjusting to a range of light work that accommodates her limitations and exists in significant numbers in the national economy. (AR 25–31.)

Doris R. B. requested Appeals Council Review of ALJ Tirrell's decision, but her request was denied on May 7, 2020. This denial rendered ALJ Tirrell's decision the final decision of the Commissioner. (R 1–18.) Doris R. B. now appeals that decision, pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. DISCUSSION

### A. Five-Step Process and this Court's Standard of Review

To qualify for Title II DIB benefits and for supplemental social security income for disability, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted

---

[1]   Certain citations to the record are abbreviated as follows:

DE = Docket entry in this case
AR = Administrative Record (DE 7)
Pl. Br. = Plaintiff's brief in support of remand (DE 14)

(or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.
>
> **Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).
>
> **RFC and Step 4:** Determine the claimants "residual functional capacity," (the "RFC") meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on her RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.
>
> **Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist

in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not

disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ Tirrell undertook the five-step inquiry. His conclusions are summarized as follows:

### Step 1

ALJ Tirrell concluded that Doris R. B. has not engaged in any substantial gainful activity since January 15, 2015, the alleged onset date of her disability. (AR 21.)

### Step 2

The ALJ found that Doris R. B. had the following severe impairments: asthma, bilateral carpal tunnel syndrome, major depressive disorder, and panic disorder with agoraphobia. (AR 21.) He also determined that Doris R. B. has the following non-severe impairments: gastritis, hypertension, diabetes mellitus, vitamin B deficiency anemia, vitamin D deficiency, hyperlipidemia, obesity and lumbar radiculopathy. (AR 21–22.) ALJ Tirrell devoted a paragraph to each non-severe impairment, explaining the objective medical evidence that formed the basis for his conclusion that the impairments were not severe. (AR 22–23.)

Because the ALJ found that Doris R. B. did suffer from several severe impairments, he proceeded to step 3.

### Step 3

With respect to her severe impairments, Doris R. B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 23.). ALJ Tirrell paid particular attention to medical listings 3.03 (Asthma), 11.14 (Peripheral neuropathy), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders).

First, ALJ Tirrell declined to find that Doris R. B.'s impairments met the criteria for medical listing 3.03 (Asthma), because the record evidence did not demonstrate the necessary FEV1 to meet the requirements of the listing. (AR 23.)

Second, ALJ Tirrell declined to find that Doris R. B. met the requirements of listing 11.14 (Peripheral neuropathy), *i.e.*, her carpal tunnel complaint, because "the evidence fails to establish an extreme limitation in the ability to standup from a seated position, balance while standing or walking, or use in the use of the claimant's upper extremities" and also "fails to demonstrate the existence of a marked limitation in physical functioning, accompanied by a marked limitation in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace or adapting or managing oneself." (AR 23.) In addition, ALJ Tirrell found that she "failed to allege any difficulty related to her exertional ability in either her function report or testimony." (AR 23.)

Third, ALJ Tirrell found that Doris R. B.'s mental impairments, both individually and in combination, did not meet the criteria of medical listings 12.04 and 12.06. Specifically, the "paragraph B" criteria were not satisfied. To satisfy "paragraph B" criteria, a claimant's mental impairments "must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." (AR 23)[2] In particular, he found that the medical

---

[2] A claimant's affective disorder meets or medically equals listing 12.04 (Depressive, bipolar and related disorders) when it either satisfies both the paragraph A and paragraph B criteria, or satisfies the C criteria of that listing. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.

To satisfy the paragraph A criteria, a claimant must, in essence, medically document the persistence of depressive or bipolar syndrome. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. To satisfy the Paragraph B criteria of listing 12.04, a claimant must demonstrate that his affective disorder results in "extreme limitation of one, or marked limitation of two" of the following areas of mental functioning:

6

evidence demonstrates that Doris R. B. had only moderate limitations in the areas of "understanding, remembering, or applying information"; "interacting with others"; "adapting or managing oneself"; and "concentrating, persisting, or maintaining pace." (AR 24.)

ALJ Tirrell also found that Doris R. B. did not meet the "paragraph C" criteria. (AR 24-25.) ALJ Tirrell also considered Doris R. B.'s degree of mental limitation when determining Doris R. B.'s RFC.

### RFC and Step 4 – Ability to Perform Past Work

Next, ALJ Tirrell defined Doris R. B.'s RFC:

---

1. Understand, remember, or apply information.

2. Interact with others.

3. Concentrate, persist, or maintain pace.

4. Adapt or manage oneself.

*Id.*

"'Marked' as a standard for measuring the degree of limitation . . . means more than moderate but less than extreme." *Id.* § 12.00.

Listing 12.04, Paragraph C states:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: (1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and (2) Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C). *See generally Trzeciak v. Colvin*, No. CV 15-6333 (KM), 2016 WL 4769731, at *7 (D.N.J. Sept. 12, 2016).

To meet or medically equal Listing 12.06 (Anxiety and Compulsive Disorders), a claimant must medically document, an anxiety, panic, or obsessive-compulsive disorder *and* the same "Paragraph B" criteria as for medical listing 12.04, *supra.* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06; *see also* https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm.

7

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can never work at unprotected heights or work with dangerous machinery. The claimant could tolerate occasional exposure to extreme cold, extreme heat, wetness, humidity, and to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation. Additionally, the claimant could frequently use her hands bilaterally for handling, fingering, and feeling. She could understand, remember and carry out simple and routine instructions. The claimant could also sustain attention and concentration over an eight-hour workday, with customary breaks, for simple and routine tasks. She could use judgment in making work-related decisions commensurate with this same type of work; specifically, work requiring no more than simple and routine tasks. The claimant would be able to adapt to changes in a routine work setting. Lastly, the claimant could have occasional interaction with coworkers and supervisors, beyond any increased interaction initially required to learn the job, and occasional interaction with the general public.

(AR 25).

ALJ Tirrell began his RFC analysis by laying out the prescribed two-step process. First, he was required to determine whether Doris R. B. had an underlying medically determinable physical or mental impairment "that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce [Doris R. B.'s] pain or other symptoms." (AR 25.) Second, he was required to "evaluate the intensity, persistence, and limiting effects of [Doris R. B.'s] symptoms to determine the extent to which they limit [her] functional limitations." (AR 25.) This evaluation required him to look to objective medical evidence, or to the entire case record, where objective medical evidence does not substantiate Doris R. B.'s statements about "the intensity, persistence, and limiting effects of claimant's symptoms." (AR 25.)

ALJ Tirrell concluded that Doris R. B.'s medically determinable impairments could reasonably be expected to cause the alleged mental and

8

physical symptoms, but found that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 26.)

With regard to her asthma, ALJ Tirrell found that various medical examinations found her lungs to be "clear to auscultation with no wheezing, rales, or rhonchi." (AR 26–28.) He also noted that one doctor diagnosed her with only mild asthma. (AR 28.)

With regard to Doris R. B.'s carpal tunnel syndrome, ALJ Tirrell referenced the report of one doctor who concluded that Doris R. B.'s syndrome was "moderately controlled" with medication and that an examination found that she had a muscle strength of 4/5 in all areas including grip. (AR 28.) In addition, Doris R. B. reported to a doctor that she has "no problems of gripping things." (AR 388.)

ALJ Tirrell also considered Doris R. B.'s mental limitations. Her psychiatrists reported that medication improved her psychological symptoms but that they returned when she ceased taking her medication. (AR 27–28.) Her various doctors described Doris R. B. as cooperative, coherent, well-groomed, and calm. (AR 27–28.) One doctor, Jose Gomez Rivera, opined that Doris R. B. was unable to work, though he also indicated that he expected her to be able to return to work within a year. (AR 369.) The determination of whether a claimant is unable to work is a legal determination reserved to the Commissioner. 20 CFR 404.1527(e)(l)(3); 416.927(e)(l)(3). That said, the fact that Dr. Gomez Rivera expressed this opinion does not render the evidence of his examination useless or inadmissible, but it was given little weight. In addition, Dr. Yalkowsky found that her mental disorders were "moderate to severe." ALJ Tirrell gave that opinion only some weight, however, because he found that Yalkowsky's assessment was vague and did not discuss specific limitations. (AR 28.) Finally, Dr. Salandy, who examined Doris R. B.'s file but not the claimant herself, concluded that her mental limitations only moderately

9

limited her abilities. A second doctor, Dr. Cortes, agreed with that assessment on reconsideration. (AR 29.)

Based on these findings, at step four, ALJ Tirrell concluded that Doris R. B. was unable to perform her past relevant work as a staffing coordinator, personnel clerk, or nail technician, because "the demands of the claimant's past relevant work exceed the residual functional capacity [] in skill level." (AR 30.)

### Step 5

At step five, ALJ Tirrell explained that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR 30.) Accordingly, he found that Doris R. B. is not disabled under the SSA. (AR 30.)

ALJ Tirrell found that Doris R. B.'s "ability to perform work at all exertional levels has been compromised by nonexertional limitations." (AR 30.) ALJ Tirrell relied on the testimony of a vocational expert, who testified that Doris R. B. would still be able to perform the following representative occupations: Stock Clerk, Apparel (Dictionary of Occupational Titles ("DOT")) 299.667-014, Produce Weigher, (DOT) 299.587-010; and Subassembler, (DOT) 729.684-054. (AR 31.)[3] All three occupations are classified as light and unskilled, and there are between 4,499 and 81,080 positions in these three occupations in the United States. (AR 31.)

### C. Doris R. B.'s Challenge

Doris R. B. challenges the Commissioner's decision on two primary grounds. First, she argues that the lack of exertional limitations in the RFC is not supported by substantial evidence. (Pl. Br. at 11–19.) Second, she argues

---

[3]   When given additional hypothetical restrictions by the ALJ, the vocational expert also noted that there were additional jobs Doris R. B. could perform including Routing Clerk and Collator Operator. (AR 72.)

that the decision offers no evidentiary rationale for the non-exertional limitations. (*Id.* at 19–29.)

### 1. Exertional or physical limitations

First, I find that the ALJ's findings as to exertional limitations were to some extent ambiguous, requiring remand. Doris R. B. argues that the ALJ improperly inserted his lay opinion to determine that certain of her conditions were nonsevere and that her RFC had no exertional limitations. (Pl. Br. at 14.)

Initially, I would find that there was substantial evidence to support the ALJ's determination that Doris R. B.'s hypertension, diabetes, lumbar radiculopathy, obesity, anemia, and gastritis were nonsevere. ALJ Tirrell referenced specific objective medical facts for all of these determinations—for example that Doris R. B.'s body mass index fluctuated around the lower boundary of obesity. (AR 22.) I note, however, that ALJ Tirrell quite properly undertook the RFC analysis with respect to the entire record, including limitations found to be nonsevere and severe.

The real point of disagreement is the ALJ's conclusion that the claimant is capable of performing a "full range of work at all exertional levels." (AR 25; Pl. Br. at 16.) That category would encompass heavy work, including carrying up to 100 pounds for eight hours per day.[4] 20 C.F.R. § 416.967(e) (defining the physical exertion requirements of very heavy work as "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more"). The government as much as concedes that such a finding would be questionable, even on a substantial-evidence standard of review, and immediately falls back on what amounts to a harmless-error argument.

The government's argument is that, if one is capable of performing heavy work, it is implied that one is also capable of doing light or sedentary work. 20

---

[4] The only physical limits, characterized as "nonexertional limitations," involved unprotected heights and dangerous machinery, and only "occasional" exposure to extreme cold, extreme heat, wetness, humidity, and to pulmonary irritants. (AR 25.)

11

C.F.R. §§ 404.1567(e), 416.967. Still, that is virtually all the government has to say on the point; it does not really attempt to suggest an evidentiary basis for the ALJ's actual finding that the claimant is capable of performing heavy work. (DE 21 at 12.) I think the burden is on the Administration, however, to justify the findings the ALJ *did* make—not to argue that there was a basis for a lesser finding, and that such a hypothetical finding would have justified the ALJ's ultimate conclusion.

The discussion at the hearing and the testimony of the vocational expert focused on light work at an unskilled level, and the ALJ found that the claimant could perform at that level. (AR 68-73.) The question remains as to why, if there are no exertional limitations, the ALJ did not so find, and make that a part of the multiple hypotheticals that he submitted to the VE. Alternatively, if the ALJ believed that the claimant was limited to light or sedentary work, then he might have picked one, and made a forthright finding to that effect.

In short, I am left in doubt as to the true basis for the ALJ's decision. The ALJ's decision does not afford this Court a sufficient basis for review. I do not mean to imply that the ALJ was required to find a disability. Indeed, I cannot rule out inadvertence; the ALJ might well have intended, as the discussion at the hearing implied, to find that the claimant did have some exertional limitation, but nevertheless was not disabled. I will therefore remand for clarification of findings as to exertional limitations, and for a reassessment of the disabling effect, or not, of the claimant's impairments in combination.

### 2. Mental limitations

Finally, Doris R. B. argues that her mental limitations, as attested to by Dr. Yalkowsky and Dr. Rivera, were disabling, and that the ALJ's conclusion to the contrary was not supported by substantial evidence. (Pl. Br. at 24–25.) Specifically, she argues that the ALJ improperly rejected evidence by treating physicians who found that Doris R. B. was disabled, and instead accepted only the opinions of non-treating physicians who believed her limitations were only

moderate. (Pl. Br. 25–26.) Doris R. B. claims that this decision was reversible error, citing *Nazario v. Comm'r SSA*, 794 F. App'x 204 (2019). I disagree.

Because I am remanding, I will not rule definitively on the effect of mental limitations in isolation. I do, however, observe that the ALJ considered the evidence fully, if not generously.

As related in the ALJ's opinion, Doris R. B. was examined by two psychiatrists, Dr. Rivera and Dr. Yalkowsky, and her mental state was also described by other treating physicians. (AR 25–29.) In addition, her file was examined by two nontreating or consulting physicians, Dr. Salandy and, upon reconsideration, Dr. Cortes. (AR 29.) Dr. Rivera concluded that Doris R. B. "suffers from severe depression and anxiety and opined that the claimant was unable to work." (AR 28.) Dr. Yalkowsky diagnosed Doris R. B. with "major depressive disorder and panic disorder with agoraphobia and opined her conditions were moderate to severe." (AR 28.) Other examining physicians did not diagnose Doris R. B.'s mental conditions, but generally found her coherent, pleasant, and able to follow instructions and engage in conversation. Finally, Dr. Salandy and Dr. Cortes both opined, upon examining her file, that Doris R. B.'s "affective disorder and anxiety disorder imposed a moderate limitation on the claimant's ability to sustain concentration and persistence; to socially interact; and to adapt with no limitation in the claimant's ability to understand and remember." (AR 29.)

All other things being equal, the ALJ is to give greater weight to the opinions of treating physicians. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (stating that ALJs should accord "treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time"). The reports of non-treating physicians are generally given less weight. *Id.* at 320. In *Nazario,* the Third Circuit found that an ALJ's decision was not supported by substantial evidence when the ALJ relied on statements of non-treating physicians; there, however, there seems to have been a more complete disregard of the opinion of a treating physician. 794 F. App'x at 211. Here,

however, ALJ Tirrell did not ignore the opinions of Dr. Rivera and Dr. Yalkowsky. Rather, he analyzed and discounted their assessments of the extent of Doris R. B.'s mental limitations, finding their opinions to be nonspecific and contradicted by other evidence.

The entirety of Dr. Rivera's opinion is a one-page form on which Dr. Rivera wrote fewer than three dozen words. (AR 369.) Dr. Rivera wrote that Doris R. B.'s "symptoms are severe depression, anxiety, sadness, insomnia, restlessness, feelings of hopelessness, poor memory and concentration. On the form, he checked "yes" in response to the question "Do any of the above diagnoses limit the patient's ability to participate in gainful employment and/or occupational training?" And he checked "no" in response to the question "Is the patient able to engage in any gainful employment and/or occupational training of *any* kind?" He next indicated that he believed Doris R. B. would be able to participate in work or occupation training a year after his examination, i.e., on July 19, 2019. Thus, Dr. Rivera's opinion contains a diagnosis, but is devoid of any objective details upon which the ALJ could determine Doris R. B.'s level of impairment; it instead simply states the conclusion that she was unable to work, though expected to improve. It was reasonable for ALJ Tirrell to give little weight to such a statement, which was little more than a bare conclusion about whether she could work.

Dr. Yalkowsky's assessment was more substantive than Dr. Rivera's, including approximately four paragraphs assessing Doris R. B.'s mental state and capacities. (AR 366–67.) Dr. Yalkowsky related that Doris R. B. presented as a "pleasant and cooperative individual with age appropriate social skills" and found that her thought processes "were logical, coherent and goal directed." (AR 366.) Dr. Yalkowsky nevertheless diagnosed her with "major depressive disorder and panic disorder with agoraphobia" and stated that her mental health condition was "moderate to severe." (AR 367.) He also opined that she would be capable of independently managing her benefit funds. (AR 367.) ALJ Tirrell did not disregard Dr. Yalkowsky's assessment, which he gave some weight. The ALJ nevertheless found that Yalkowsky's conclusions related

to Doris R. B.'s mental conditions were vague and did not detail her limitations with specificity. (AR 28.) ALJ Tirrell did take Dr. Yalkowsky's opinion into consideration when determining Doris R. B.'s RFC, which does incorporate mental limitations.

Dr. Salandy and Dr. Cortes, in contrast, determined that Doris R. B.'s file showed that she would have only moderate limitations in her ability to sustain concentration and persistence, to socially interact, and to adapt, and found no evidence of limitation in her ability to understand and remember. (AR 29.) In addition, Dr. Salandy opined that Doris R. B. "would be able to perform simple and routine work, with minimal social interaction," and on reconsideration, Dr. Cortes agreed. (AR 29.) ALJ Tirrell gave these opinions substantial weight.

ALJ Tirrell examined and weighed the record logically, giving reasons for discounting the opinions of Dr. Rivera and Dr. Yalkowsky ,while giving more weight to the opinions of Dr. Salandy and Dr. Cortes. Were I viewing this issue in isolation, I could find ALJ Tirrell's finding that the mental limitations were moderate to be supported by substantial evidence. On remand, however, it will be necessary to view and reweigh the evidence as a whole.

### III.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and REMANDED. An appropriate order accompanies this Opinion.

Dated: January 5, 2022

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty**
**United States District Judge**